Case number 20-3274, Sabrina Jordan versus John Howard et al. Argument not to exceed 15 minutes per side. Ms. Rodas, you may proceed for the appellant. Good morning, Your Honors. Duane Sam for Plaintiff Appellant Sabrina Jordan. With me is third year law student Alexis Rodas and with the court's permission and pursuant to the law student entry of appearance form, I'd like to present Alexis for oral argument in this case. Thank you. Farewell. Good morning. Good morning, Your Honors. You may proceed. Honorable Judges, and may it please the court. Good morning. Alexis Rodas on behalf of the Your Honors, before I begin, may I please reserve three minutes for rebuttal? Yes, you may. Thank you. The appellant respectfully asked that this court reverse the district court's order granting defendants motion for summary judgment and remand the case for further proceedings for two key reasons. First, the conflicting testimony and evidence found within the record creates a genuine dispute of material fact as to whether Mr. McShan ever pointed a gun at the officers in the moments before he was shot. Second, defendants Howard and Knight violated Mr. McShan's clearly established Fourth Amendment rights when they shot and killed him. Now, Your Honors, moving to my first point, that the conflicting testimony and evidence found within the record creates a genuine dispute of material fact as to whether Mr. McShan pointed a gun at the officers in the moments before he was shot. As this court held in Sova versus City of is inappropriate where contentious factual disputes exist regarding the reasonableness of the use of deadly force, particularly where the legal question is completely dependent upon which version of the facts is accepted by the jury. The district court cannot grant officers immunity from a deadly force claim as the jury, not the judge, must determine the issue of liability. Here, the legal question of qualified immunity turns on which version of the facts is accepted by a jury. The factual inconsistencies contained within the record raise doubt as to whether Mr. McShan ever pointed a gun at the officers, and thus whether he posed a serious threat of physical harm to the officers or others. However, it is essential that the gun actually be pointed at the officer, or would it be sufficient that the action of reaching for a gun, which is reasonably perceived by the officer as constituting an immediate risk of serious bodily harm or death, is sufficient? The question is, does the case really rise and fall of whether the weapon was physically pointed, which I don't think it is. I think it's whether it's reasonable for an officer to fear immediate risk by the action, and the action may be reaching for the weapon as opposed to pointing it. Would you agree with me or not? Respectfully, Your Honor, the appellant would disagree. Ohio is an open carry state, and thus it cannot be the case that every time a person merely reaches for or holds a gun, which officers have no reason to believe they do not lawfully possess, that that alone... We actually have to wait for the weapon to be physically pointed at you before an officer can respond, that the action of going for the gun is not sufficient, and we have to wait, the officer has to wait for the weapon to physically be pointed at the officer. That's your position. As this court held in Seminole versus Streicher and suggested in King versus Taylor in 2012, the line between whether a suspect poses a reasonable threat to the officers is whether he raised and pointed a gun at the officers, not whether he was merely holding a gun. Here, the defendant's own testimony admits that they had no reason to believe why Mr. McShann picked up the gun, and the officers admitted that Mr. McShann could very well have been picking up the gun with the intent to move it to the side and get out of the car in order to comply with officer demands. Thus, it is the appellant's contention that the officers must wait to shoot in an open carry state until there is a threat posed, and a threat posed is dependent upon whether the officers saw Mr. McShann raise his weapon. Additionally, the officers are not clear as to whether Mr. McShann ever heard the demands of the officers, and thus, it is not clear in the record whether Mr. McShann was failing to comply with officers' demands. In fact, here, Mr. McShann- Thank you. I have a question about that. If it went to trial, is there any evidence that the victim heard what the officers were saying? Can anybody testify about that? No, Your Honor. There is no such evidence contained within the record. Mr. McShann's girlfriend arrived on the scene just moments around the officers' contention when they were giving such demands as they claim. However, his girlfriend never heard such demands, and immediately after leaving the scene due to officers' commands, heard several shots fired. Furthermore, even if officers did give such commands to Mr. McShann, there is no evidence in the record that Mr. McShann would have been able to actually hear such demands. As here, Mr. McShann had just wakened from a deep sleep, there was loud music blaring, and there were lights shining within his eyes. Thus, there is no evidence contained within the record that Mr. McShann was able to hear the commands, or that he was failing to comply with such commands. However, what the record does reflect is that immediately after Officer Knight knocked on Mr. McShann's door in order to wake him up and allegedly gave him commands in order to comply with officer demands, Mr. McShann raised at least one, if not both, of his hands before turning to look at Officer Knight and Officer Howard, as well as Officer Cornley on the right side of the vehicle. Thus, if anything, the record suggests that Mr. McShann was complying with officer demands here. This brings me to my first point, Your Honor, that there is conflicting testimony in the evidence as to whether Mr. McShann posed a threat to the officer's safety. In particular, the critical factual dispute contained in the record is between Officer Knight and Officer Howard. Officer Knight testified that Mr. McShann pointed a gun at Officer Knight for the duration of the shooting and never dropped or tossed the gun, despite Officer Knight maintaining a visual on McShann's hands for the duration of the shooting. However, this testimony by Officer Knight is directly conflicted by Officer Howard's testimony that he never saw Mr. McShann move the gun in front of his body or raise it at any of the officers, despite Officer Howard also having a clear line of sight to Mr. McShann and his testimony that he also maintained a visual on McShann's hands for the duration of the shooting. Thus, these factual disputes contained within the record clearly raised doubt as to whether Mr. McShann posed a threat to officer's safety. The evidence available was from the officer's testimony. There were no there's no eyewitness testimony on behalf of the decedent. So your argument would be that there's sufficient evidence that could be derived from the officer's testimony to raise sufficient material disputes of fact to preclude summary judgment. And because the expert testimony was excluded, your entire case hinges on the officer's testimony. Is that correct? First, Your Honor, the appellant would argue that the district court incorrectly excluded Dr. Bower's for the sole reason that he could not determine the order of the shots fired. However, the district court overlooked the other reasonable information that Dr. Bower's report concluded, including the direction of the bullets, the positioning of McShann's hands in the moments before he was shot, and the other trajectory of the bullets as well, all of which provide light to the facts at issue. However, the appellant also would suggest that even if this court upholds the district court decision to exclude Dr. Bower's testimony, there are sufficient factual disputes contained within the record itself and defendant's own testimony to suggest that the use of deadly force here was unlawful. In fact, in this case, the plaintiff appellant actually has more evidence than the plaintiffs in King. As here, as you suggested, Your Honor, there is actually a factual dispute contained within the defendant's own eyewitness accounts, and we are not specifically relying on only expert testimony or only plaintiff's eyewitness testimony. Thus, this brings me to my second point, Your Honors, that Officer Howard and Knight violated Mr. McShann's clearly established Fourth Amendment rights when they shot and killed him. Officers are not entitled to qualified the Supreme Court held the deadly force, use of deadly force against an individual constitutes a seizure for the purposes of the Fourth Amendment, and thus Mr. McShann was seized when he was shot and killed by Officers Howard and Knight. As this court held in Seminole v. Streicher, we established in 2006 that individuals have a right not to be shot unless they are perceived as posing a threat to officers or others. In King, this court held that, quote, we would have little trouble concluding that if the officer shot the suspect while he was not pointing a gun at officers, that the officer violated his clearly established right to be free from the use of deadly force. Your Honors, the case before you today is similar to King in that there is a factual dispute as to whether the plaintiff ever pointed a gun at the officers in the moments before he was shot, and thus whether the use of deadly force against him was reasonable. However, as I've already pointed out, plaintiffs have more evidence than the plaintiff in King, as here the defendant's own testimony contains conflicting reports regarding the events surrounding the shooting, specifically that Officer Howard testified that Mr. McShann never moved the gun in front of his body nor pointed it at any of the officers. The District Court has a duty to view the facts in the light most favorable to the plaintiff, and in doing so, the District Court should have viewed the facts that an individual has a right not to be shot in the situation at hand. Here, Mr. McShann woke up and was shot just 10 to 20 seconds afterwards after only grasping a gun, which officers had no reason to believe he did not lawfully possess. Furthermore, Officer Corley provided inconsistent reasons for failing to discharge his weapon, a fact which this court held in Brandenburg v. Curitin, a jury may reasonably consider as to why the officer did not shoot if officers claimed that they were facing a serious bodily injury. Thus, Your Honors, because there are factual disputes as to whether Mr. McShann was shot, the appellant respectfully asks that this court reverse the District Court's order granting defendants motion for summary judgment and remand the case for further proceedings. Thank you, Your Honor. Thank you very much, and we'll hear from opposing counsel. Good morning, Your Honors. Good morning, Ms. Rodas. My name is Kelly Schroeder, and I am attorney for the officers. I'm here today asking this court to affirm the decision of the District Court, which granted summary judgment to Officer Knight and Officer Howard on the basis of qualified immunity. I submit that Judge Rose got it right in finding that the officers did not violate a clearly established constitutional right. The evidence establishes that Mr. McShann suddenly grabbed the gun, raised it up, started pointing it at the officers. At that point in time, deadly force was authorized. There is conflicting testimony between and among the officers as to what occurred in the sequence of the events. You would concede that, would you not? I wouldn't concede that there was conflicting testimony about what happened in the events. I would concede that there was conflicting testimony among the officers about when they were authorized to use deadly force. So, Officer Howard stated that as soon as McShann grabbed the gun, deadly force was authorized and he shot him. Officer Cornley felt like the deadly force was authorized when he started to point the gun at him. I would submit to this court, Your Honors, that the moment he grabbed the gun, as Judge if we required them to actually have a weapon pointed at them before they could respond, we'd have a lot of dead officers all over the country. It's just not the rule. The standard is that they may use deadly force if they reasonably perceive an immediate risk of death or serious bodily harm. The rule is not a per se rule that only occurs when the weapon is pointed directly at you. I think that whole issue is erroneous. I think Howard did testify that the shots were fired after the deceased went to grab the gun and he perceived the threat. I guess the question is, is that a reasonable perception on his part? I would think it is. I don't see a genuine issue of material fact established by the officer's testimony, even though it's a little different of whether the gun was pointed or whether it was the action of grabbing. I think the case rises and whether that somehow creates a genuine issue here. The other side didn't talk about that much, but that's what I'm concerned about. If you want to talk about the expert's testimony and whether your position, it does not create a genuine issue of material fact, which I think is critical because the district judge ruled in the alternative. He said, I'll consider the testimony after considering it all. I hereby rule it does not create a genuine issue. Furthermore, I think it doesn't satisfy the Dawbert test of credible expert testimony. He didn't just rule on Dawbert. He also said, even if I consider it, it still doesn't create a genuine issue. Can you talk about that? Why, in your view, doesn't Bauer create a genuine issue of material fact? Yes, Your Honor. First, I just want to say that I do agree with everything you stated before. The police officers do not have to wait until the gun is pointed at them. It would be a horrible rule if we established that in this case. Absolutely. What about the argument that the gun was never pointed? One officer testified that the decedent raised both hands up in response to the officer's commands. Another officer testified that he only raised one hand up. Right there, we've got a relatively important factual dispute. What would you say about that kind of testimony? Your Honor, the testimony was that the officers were shouting, police, raise your hands, keep your hands off the gun. That Mr. McShann woke up, he raised one or both of his hands and started to comply. He turned and then he turned the other way. He turned back, he was complying, and then all of a sudden, he grabbed the gun. The moment he grabbed the gun, I would submit the officers were permitted to use deadly force. It's either shoot or be shot themselves. Judge Griffin, getting to your point about Bauer's report. Yes, Judge Rose did make two separate findings. The first one is that I don't even have to analyze this under Daubert because even if I assume that everything in his report is true, it still doesn't create a genuine issue of material fact. That's what we agree with because what Bauer said was that McShann did not have the gun in his hand at the moment a bullet entered his thumb. We know that there were eight shots fired by Howard in his shotgun, so we don't know which bullet hit first. We know that there were six that hit him, right? There were six that hit him, two of them by Howard. Six bullets in his body, but we don't know the order of those six bullets that went into his body. Bauer assumes that the bullet in his hand had to be the first bullet. Therefore, if that's the first bullet, he could not have been grasping the gun at that time. There's no reason to assume that's the first bullet when there's six of them that actually go there. If one of the other five was the first one, I assume that that would have caused him to drop the weapon. Therefore, a subsequent bullet that hit his hand, you wouldn't expect the gun to be there. That's what the district judge ruled. It just doesn't make any sense. The opinion that the first bullet had to have been the one that hit his hand is total speculation. There's no basis for the expert to make that opinion. Basically, you agree with that as well, I assume. Yes, precisely, Your Honor. There is something else that I want to bring to this court's attention. I think that the appellant is trying to make an inference that maybe Mr. McShan never grabbed the gun. I would say that the evidence in this case, all four officers consistently testified that after the shooting was over, the gun ended up in the passenger seat. If McShan hadn't grabbed and raised the gun at the time the shooting was over, it would have still been laying in his lap, but it was moved over to the passenger seat. If somebody's getting shot, they're going to be moving around and jerking around, presumably in response to these shots, and could easily knock the gun one place or the other within the car. I don't get that argument that you're making now. Your Honor, that's what the King case said. In King, he was shot with a single bullet, and the gun was found afterwards to be resting on his lap. The police officers had alleged that he was shot. Basically, he had picked up the gun, pointed at the police officers, and that's why they shot him. But the forensic evidence showed that the gun was still on his lap after the shooting. Yes, but the other man was shot six times. It's hard to believe he would have not moved during all this shooting that he was being subjected to, and obviously could have moved the gun. I'm not really getting this point you're making now. Presumably, he could have moved, Your Honor. I find it far-fetched to think that he could have moved or jerked so much to take the gun up off of his lap over into the passenger seat, but I understand your... He got shot twice with a shotgun. That's such a traumatic force. I mean, he could have moved all kinds of ways. If you've ever seen anybody get shot with a shotgun, it's not a pretty picture. Certainly, Your Honor. In any event, the other point that I would like to talk about is the other officers were not permitted to use deadly force, and I would submit that that is not appropriate. Officer Cornley's testimony was that he was on the right side of the car. He did not have a good shot, and he felt it would have endangered the officers to take that shot, and that's why he did not shoot. So, I find that to be completely appropriate. I think at the end of the day, Your Honor, the overwhelming testimony and evidence establishes that Mr. McShann suddenly grabbed for a gun in contravention of the officer's commands. He started to raise that gun. The officers feared for their lives, and that's when they employed deadly force. I would urge this court to affirm the decision of the court. What do you have to say about whether the judge's explanation as to the propriety of excluding the expert was sufficient or not? The reasons given by the judge with regard to excluding the expert testimony, I mean, there's some contention that he should have perhaps had a further inquiry or even some sort of evidentiary proceeding, but there's also the contention that he didn't say enough to explain his ruling in any event as to whether the testimony should have been admitted under Daubert. Yes, Your Honor. So, first and foremost, I would say that the plaintiff appellant had the opportunity to ask the court to hold a hearing or to file a reply in the lower court and did not do so. This issue is being raised for the first time on appeal, so this court should decline to address it. The issue of whether the expert testimony was properly excluded, or do you mean the sort of sub-issue of whether there should have been a hearing on the matter? Whether there should have been a hearing, Your Honor. Okay, I think the problem with that is that the defense did not object prior to the ruling on the basis of Daubert, did they? We didn't object. The Daubert issue was first raised by the district judge in his opinion, and the plaintiff had no notice ahead of time, did they, that Daubert would be an issue and that they had to come forth with sufficient proof under Daubert? So, that's incorrect, Your Honor. The officers, we did raise that issue. We filed our motion, they filed their opposition and support. They used their expert, Dr. Bauer, and our reply, we raised the issue of Daubert. Okay. All right, so you say your reply brief was sufficient to raise the Daubert issue? Yes, Your Honor. I believe that the judge, you know, had the plaintiff appellant wanted to have a hearing. She could have asked Judge Rose for a hearing, and I think he would have the point because there's alternative rulings, and the judge actually considered all the evidence, and then the alternative said, well, although I've considered it, I think also it's not admissible under Daubert. So, I think it's kind of beside the point. I agree, and there's one thing that I want to raise for this court in case there's any question as to whether this report does not satisfy Daubert. Dr. Bauer himself says in his report, it's important to note that the precise locations of gunshot wounds with respect to anatomic landmarks, the location position of the gun before it was moved by the officers involved in the death of Mr. McShan, the bullet evidence inside of the vehicle, and the physical condition of the gun attributed to Mr. McShan were severely deficient. So, he's saying that the evidence is deficient. Therefore, any opinions that he makes based upon that evidence also have to be deficient and speculative, your honors. Did he say his opinion was going to be defective because of the evidence being defective? Is that what he said? He didn't. Was that just you talking? Yeah, no. So, he made all those statements. I'm reading these right from his report, but then at the end he says, but I still have a really good opinion, and it's that he wasn't holding the gun at the time he was shot in the hand. All right. So, your honors, I see my time is almost up. I submit to you that there are no genuine issues of material fact and that the officers are entitled to qualified immunity, and I would ask this court to affirm the decision of the district court. Thank you. We'll hear rebuttal at this time. Yes, your honor. Just three points on rebuttal for the appellant. First, the district court's sole basis for excluding Dr. Bower's expert testimony below was that Dr. Bower's expert testimony could not conclude the sequence of shots fired. However, this fails to consider that the sequence of shots fired is immaterial in this case. The sequence of shots fired would only matter if the suspect here, Mr. McShann, dropped the gun at some point during the encounter. However, all defendants concede in their testimony that they did not see Mr. McShann drop his gun at any point during the encounter, despite having a clear line of sight to his hands at all times. Specifically, Officer said that he never dropped or tossed the gun and that he never saw Mr. McShann move away from him during the encounter. However, this is directly conflicted by the physical evidence that shows no such damage to the gun. Or if Officer Knight's testimony were true and that Mr. McShann was pointing a gun at him for the shooting and that he never dropped or tossed the gun, the gun would have sustained at least some damage by at least one of the bullets, regardless of the order of shots fired. However, this is not the case here. Furthermore, Your Honors, while the appellant does not dispute that Mr. McShann... Ms. Rodas, wasn't the gun found in the passenger's seat? Yes, Your Honor. However, here the defendant, the appellants do not dispute that Mr. McShann picked up the gun and defendant's own testimony suggests that Mr. McShann could have been picking up the gun in order to move it to the passenger seat and get out of the car to comply with officer's demands. However, there's no reason to believe that Mr. McShann did not comply with officer's demands or even that he heard officer's demands here. Furthermore, to my third point, Your Honors, the facts identified in this case are almost identical to those identified by this court in King v. Taylor in 2012. It really are. I wrote the autopsy report created the genuine issue of material facts so that actually the physical evidence contradicted the officer's testimony in King. I mean, that's what I wrote. Yes, Your Honor. And that's correct. However, the critical fact that the court suggested in King was whether the suspect there pointed a gun at the officers. And that's exactly the disputed issue here. The autopsy report contradicted their testimony. Their testimony was that he pointed the gun at him, but the autopsy report contradicted it. And whether or not they pointed the gun, the deceased pointed the gun, in my view, is really not the critical factor. The issue is whether a reasonable officer would perceive an immediate risk of death or serious physical harm from the action. And the action doesn't necessarily have to be pointing the gun. And anyway, I think that's what the law is. Your Honor, I see my time has expired, but may I briefly conclude as to your last point? Sure. Go ahead. Your Honor, in King, this court held that, quote, we would have little trouble concluding that if the officer shot the suspect while he was not pointing a gun at the officers, they violated his clearly established rights. And King cited four previous cases from this circuit, including Yates, Robinson, Simonillo, and Blatt, to assert this conclusion. Furthermore, it cannot be the case, Your Honor, is that in an open carry state like Ohio, merely picking up or grasping a gun, which an individual has a lawful right to possess, constitutes reasonable suspicion for an officer to use deadly force against that individual. Thus, Your Honors, for the foregoing reasons, the appellant respectfully asked that this court reverse the trial court's order and remand the case for further proceedings. Thank you. Thank you, Ms. Rodas. And I think you presented an excellent first argument, if this was your first argument. And I think the panel can congratulate you on doing an excellent job. Thank you, Your Honor. You're quite welcome. And so the case is submitted.